IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ALBUQUERQUE PLAZA OFFICE
INVESTMENT, LLC,

    Plaintiff,

vs.                                                                                                  No. Civ. 10-1047 JAP/RLP

CITY OF ALBUQUERQUE and
DOWNTOWN ACTION TEAM, INC.,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

        On November 4, 2010 Plaintiff Albuquerque Plaza Office Investment, LLC (Plaza) filed a Complaint For Declaratory And Injunctive Relief (Doc. No. 1) against Defendants City of Albuquerque (the City) and Downtown Action Team, Inc. (DAT). Plaza alleged that assessments it is required to pay for a business improvement district (BID) violate the Just Compensation Clause of the United States Constitution, Plaza's constitutional right to due process and equal protection, and state and federal law by disproportionately assessing the various businesses within the BID. On November 23, 2010 the City filed a Motion to Dismiss Complaint For Declaratory And Injunctive Relief (Doc. No. 7) and a Memorandum In Support Of Its Motion To Dismiss Complaint For Declaratory And Injunctive Relief (Doc. No. 8) (collectively "Motion to Dismiss") asserting that Plaza's constitutional claims are not ripe and should therefore be dismissed. Plaza filed a Response in Opposition to Defendant City of Albuquerque's Motion and Memorandum to Dismiss Complaint (Response) (Doc. No. 26) on January 7, 2011 and the City filed a Reply In Further Support of its Motion to Dismiss Complaint for Declaratory and Injunctive Relief (Reply) (Doc. No. 32) on January 20, 2011. On

December 9, 2010 Defendant DAT filed a separate Motion to Dismiss Complaint For Declaratory and Injunctive Relief (Doc. No. 16), in which DAT joined in the City's Motion to Dismiss and also made a number of additional arguments as to why Plaza's Complaint should be dismissed. Because the Court, having considered the briefs and the applicable law, concludes that the City's Motion to Dismiss is dispositive and that the case should be dismissed, and because DAT has joined in the City's Motion to Dismiss, the Court will refer to both Defendants as "the City" for purposes of this opinion.

## BACKGROUND

In June 2000, a business plan for the Downtown Albuquerque Business Improvement District (BID) was submitted to the Albuquerque City Council by the Downtown Business Improvement District Planning Group. According to Plaza, the purpose of the business plan was to "provide enhanced services to properties located within the central business district" in Albuquerque, NM. In August 2000, after a public hearing, the Albuquerque City Council enacted an ordinance that adopted the business plan and created the BID. *See* City of Albuquerque, N.M., Code of Ordinances §14-18-1 to -7. The BID encompasses an area bounded by "Marble and Slate Avenues to the north; railroad tracks to the east; Coal Avenue to the south; [and] 5th, 6th, and 10th Avenues to the west." *Id.* at § 14-18-2(B). Plaza owns a commercial office building located at 3rd Street and Copper in downtown Albuquerque, and is therefore within the BID.

Except for residential properties, properties owned by non-profit corporations, and properties owned by the government, every property within the BID is assessed an improvement district benefit fee. *Id.* at § 14-18-2(C) (2000). In order to calculate the benefit fee, the City first determines the "assessment valuation" of each property which is "equal to one-third of the

Bernalillo County real property taxation assessment valuation." *Id.* at § 14-18-3(B). The benefit fee is then assessed at "the lesser of .0059 or the percentage calculated by dividing the total amount of the improvement district budget by the total amount of the assessment valuation for all non-excluded parcels located in the improvement district." *Id.* at § 14-18-3(C). Due to the high value of Plaza's property, Plaza pays approximately $72,000 per year for the BID.

The purpose of the BID was to provide improvements to the downtown area in Albuquerque. *See Id.* at 14-18-5. To fulfill that purpose, the City created a "Downtown Albuquerque Safe and Clean Program" to carry out the BID's goal. *Id.* DAT was appointed by the City as the management committee for the BID. DAT is required by the ordinance "to administer all improvements within the improvement district, in accordance with the business improvement district plan." *Id.* at § 14-18-6(D). Under the ordinance, "[t]he improvements made by the improvement district [are] deemed to benefit each improvement district real property parcel in an amount not less than the benefit fee assessed against it." *Id.* at § 14-18-5(D).

The BID was intended to "operate continuously, subject to [City] Council review every five years." *Id.* at § 14-18-2(E). However, at the "year ten [City] Council review," the ordinance required the "submission to the [City] Council of a petition for reaffirmation and continuance signed by at least 51% of the real property owners comprising at least 51% of the total real property owners in the [BID]." *Id.* at § 14-18-2(E)(1). In order to terminate the BID or change the management committee, a petition for termination must be "signed by not less than 51% of the district property owners, who represent not less than 51% of the assessed property value of the district." *Id.* at § 14-18-2. Thus, the petition requirements for reaffirming the BID are slightly different than the requirements for terminating the BID or changing management committees. In December 2010 the BID was reaffirmed by the City Council after the requisite number of

petitions were received.

Plaza's claims primarily stem from the manner in which the petition requirements effect Plaza's ability to petition to continue or terminate the BID. According to Plaza, there are 275 parcels within the BID that are owned by 185 different ownership groups. Plaza owns four of those parcels and is considered one ownership group. Plaza contends that it receives "1.45% of the vote with respect to the real property owners and .540% of the vote with respect to the total real property owners." Because Plaza's property has a higher value than the majority of the properties within the BID, Plaza pays "approximately 9% of the" total assessments. Plaza notes that another ownership group within the BID "receives 2.18% of the vote with respect to the real property owners and pays .4676% of the tax." Plaza also alleges that it "receives little to no benefit from the [BID] even though it pays a large amount of the tax." Complaint at 7. According to Plaza, while a large portion of the BID funds go to services to "keep the sidewalks clean and pick up trash," Plaza pays an independent company to keep its sidewalks clean. Complaint at 6.

In Count I of its Complaint, Plaza contends that the City's "disproportionate assessments and taxes against [Plaza] amount to appropriating [Plaza's] property rights without just compensation." Complaint at 8. Plaza contends that this is a "taking of the property and an inverse condemnation" in violation of New Mexico law. In Count II of its Complaint, Plaza asserts that "Defendants have deprived [Plaza] of its property rights without due process of law" and that the City's conduct "violates [Plaza's] rights to procedural and substantive due process under the United States Constitution and New Mexico Constitution." In Count III, Plaintiff asserts that "Defendants tax and assess other properties in the BID a lesser amount while receiving greater benefits, thereby treating [Plaza] differently" in violation of the Equal

Protection Clause of the United States Constitution.  Complaint at 10-11.  Finally, in Count IV Plaza alleges that having to pay 9% of the total assessment while receiving less than one percent of the power of petition is a violation of law and that the 2010 ordinance reaffirming the BID violates state law.[1]

In its Motion to Dismiss, the City contends that Counts II-IV of Plaza's complaint all relate to Count I, Plaza's takings claim, and that Counts II-IV are therefore subsumed into the takings claim.  In addition, the City contends that Plaza's takings claim is not ripe because in order to assert a takings claim, a plaintiff must first seek compensation in state court. Because Plaza has undisputedly failed to seek compensation in state court for inverse condemnation, the City contends that the takings claim, and the more general constitutional claims that are subsumed within the takings claim, are not ripe for review in federal court.

## DISCUSSION

### I.  Plaza's Due Process, Equal Protection, and Unfair Apportionment Claims are Subsumed into Plaza's Takings Clause Claim.

In its Motion to Dismiss, the City argues that because Plaza has asserted a claim under the Just Compensation Clause of the United States Constitution, Plaza's remaining claims for due process, equal protection, and unfair apportionment are subsumed within the takings claim.

---

[1] Plaza contends that the ordinance reaffirming the BID violates the "creation by petition act."  Plaza cites "NMSA 1978, §§3-63-1 et seq." in support of this assertion. Sections 3-63-1 to -16 comprise the Business Improvement District Act, not the "creation by petition act." However, the Court believes that Plaza is relying on NMSA 1978, § 3-63-6 (1999), a section of the Business Improvement District Act that is entitled "Creation by petition." Section 3-63-6 requires that "whenever ten or more business owners comprising at least fifty-one percent of the total business owners in the proposed district . . . petition the council in writing to create a [BID]. . . the council shall refer the petition to a planning group." This requirement *only* applies to the creation of a BID, and has no applicability where, as here, a BID has already been created and is simply being reaffirmed.

5

The Court agrees.

As a general rule, where a plaintiff alleges that the government has violated a specific constitutional right, claims that the government has also violated more general constitutional provisions that arise from the same factual situation will be subsumed into the claim for violation of the more specific constitutional right. *See Miller v. Campbell County*, 945 F.2d 348, 352 (10th Cir. 1991). This rule has been applied explicitly where a plaintiff contends that a deprivation of property is in violation of both the Just Compensation Clause and other more general constitutional provisions. *See id.* In *Miller*, the Tenth Circuit Court of Appeals declined to address a plaintiff's due process claims because "the Just Compensation Clause of the Fifth Amendment imposes very specific obligations upon the government when it seeks to take private property." *Id.* The Tenth Circuit explained that it was "reluctant in the context of a factual situation that falls squarely within [the Just Compensation Clause] to impose new and potentially inconsistent obligations upon the parties under the substantive or procedural components of the Due Process Clause." *Id.* Because the plaintiff's due process claims related specifically to the taking of property, the Tenth Circuit determined that "it [was] appropriate . . . to subsume the more generalized Fourteenth Amendment due process protections within the more particularized protections of the Just Compensation Clause." *Id.*

The Tenth Circuit later applied this same rule to a plaintiff's equal protection claim, concluding that the equal protection claim "was subsumed within the more particularized protections of the Takings Clause" because the equal protection claim rested on the same facts as the plaintiff's takings claim. *Bateman v. City of West Bountiful*, 89 F.3d 704, 709 (10th Cir. 1996) (quotation marks and alterations omitted). The Tenth Circuit explained that the United States Supreme Court has "rejected substantive due process challenges where the allegedly

illegal governmental action was clearly encompassed by some other, more specific, enumerated constitutional right." *Id.* In addition, the Tenth Circuit noted that allowing a plaintiff to allege both a specific takings claim and a more general due process or equal protection claim based on the same facts "would enable a resourceful litigant to circumvent the ripeness requirements" of the Just Compensation Clause. *Id.*

Thus, whether Plaza's equal protection, due process, and unfair apportionment claims are subsumed within its takings claim depends on whether all of the claims are based on the same underlying facts. Whether a claim is based on the same underlying facts can be determined by looking at the nature of the loss that a plaintiff alleges. "When a plaintiff alleges that he was denied a property interest without due process, and the loss of that property interest is the same loss upon which the plaintiff's takings claim is based, [the Tenth Circuit] has required the plaintiff to utilize the remedies applicable to the takings claims" and the due process claims will be subsumed within the takings claims. *Rocky Mountain Materials & Asphalt, Inc. v. Bd. of County Commissioners of El Paso County*, 972 F.2d 309 (10th Cir. 1992).

In its Complaint, Plaza asserts that the City violated the Just Compensation Clause of the United States Constitution by requiring Plaza to pay a "disproportionate assessment[] and tax[]" for the BID. Plaza contends that the alleged violation of the Just Compensation Clause caused Plaza to suffer from a loss of economic value, loss of income, loss of assessments paid, loss of interest, and costs and attorney fees. Complaint at 9. These losses all stem from the fact that Plaza is required to pay an assessment fee. Thus, under *Bateman*[2] and *Miller*, Plaza's remaining

---

[2] In its Response, Plaza contends that "the Fifth Circuit has explicitly rejected the holding in *Bateman* to the extent it creates a blanket rule that the takings clause subsumes any substantive due process claim relating to a deprivation of property." Response at 5. Because this Court is bound by Tenth Circuit law, the fact that the Fifth Circuit has rejected the reasoning of a Tenth Circuit opinion has no bearing on the law applicable to this case.

claims will be subsumed within its takings claim if those claims also arise from the fact that Plaza is required to pay an assessment fee.

**A. Due Process**

Plaza contends that the City "violate[d] [Plaza's] rights to procedural and substantive due process" because the City "deprived [Plaza] of its property rights without due process of law." In support of this assertion, Plaza cites *Norwood v. Baker*, 172 U.S. 269, 277 (1898) for the proposition that "due process of law . . . requires compensation to be made or secured to the owner [of private property] when private property is taken by a state or under its authority for public use." In addition, Plaza contends that "the differing requirements for reaffirmation versus termination violate [Plaza's] due process rights" and that it was damaged by both of these alleged due process violations "in an amount, including, but not limited to, loss of economic value, loss of income, loss of assessments paid, loss of interest, [and] costs and attorney fees." Complaint at 10. Thus, while Plaza asserts two separate due process violations, its alleged damages for both violations all stem from the losses Plaza allegedly incurred as a result of the assessments imposed by the BID—the same loss that Plaza suffered as a result of the alleged Just Compensation Clause violation.

Plaza, however, maintains that its due process claims "are based on completely different allegations" than its takings claim and that the due process claims can therefore proceed independently from the takings claim. In support of this assertion, Plaza identifies seven allegations in its Complaint that, according to Plaza, make Plaza's due process claims rely on a different set of facts than its takings claim. Specifically, Plaza contends that its due process claims are based on: (1) a lack of legal and fiduciary authority over the BID; (2) a failure to require the development of annual budgets, assessment rate recommendations, and monitoring of

8

the delivery of day-to-day services; (3) a failure to comply with the procedures for reaffirming the BID after ten years; (4) the different voting requirement for reaffirmation and termination; (5) the application of the ordinance to Plaza despite the ordinance having allegedly sunsetted; (6) an alleged deficiency in the manner in which the resolution reaffirming the BID was submitted; and (7) an allegation that the DAT offered money to businesses in exchange for signing the petition to reaffirm the BID.

While Plaza has certainly identified a number of factual allegations supporting its due process claims that differ slightly from the allegations that support its takings claim, Plaza has failed to account for the fact that the deprivation of property that Plaza has suffered as a result of the City's alleged due process violations all stem from the City's act of collecting an assessment from Plaza for the BID. The only harm that Plaza has alleged to have suffered as a result of these due process violations is the payment of the assessment fees. This alleged deprivation is exactly the same conduct that Plaza asserts has resulted in a taking of its property without just compensation in violation of the Fifth Amendment. Because these two losses are the same, Plaza has failed to establish that its due process claims arise from a different set of facts such that its due process claims can proceed independent of its takings claim. Thus, Plaza's due process claims are subsumed within its takings claim.

**B. Equal Protection**

Plaza's equal protection claim is based on the allegation that other similarly situated businesses pay a lesser assessment while receiving a greater benefit. While the City argues that the equal protection claim is subsumed within Plaza's takings claim, Plaza contends that its equal protection claim "requires a separate analysis" from Plaza's takings claim "because the premise supporting [the equal protection claim] is the disparate treatment under the law of

9

similarly situated individuals regarding the taking of [Plaza's] property right." Response at 4. While the analysis to determine whether an equal protection violation has occurred is certainly different from the analysis to determine if a taking has occurred, the underlying loss—the yearly assessment—is identical in both claims. Thus, like Plaza's due process claim, Plaza's equal protection claim is subsumed within its takings claim. *See Bateman*, 89 F.3d at 709 (concluding that equal protection claims based on the same facts as a takings claim are subsumed within the takings claim).

## C. Disproportionate Assessments

In its Complaint, Plaza also asserts a claim for disproportionate assessments and alleges that the City's act of "assessing [Plaza] 9% of the total assessment for the BID and providing [Plaza] with the power of petition of less than 1% is in clear violation of State and Federal laws." Complaint at 11. In its Motion to Dismiss, the City argues that the disproportionate assessment claim is identical to Plaza's takings claim, and should therefore be subsumed within Plaza's takings claim. In its Response, Plaza appears to concede that the claims are identical as Plaza does not address the City's argument in any way. *See* D.N.M.LR-Civ. 7.1(b) (providing that "[t]he failure of a party to file and serve a response in opposition to a motion . . . constitutes consent to grant the motion"). Both the takings claim and the disproportionate assessment claim seek damages resulting from the fact that Plaza's share of the yearly assessments for the BID is disproportionate to its power vote to terminate or continue the BID. The damages Plaza seeks for both claims are identical, and both claims stem from the same loss—paying yearly assessments. Thus, like Plaza's due process and equal protection claims, Plaza's disproportionate assessment claim is subsumed within Plaza's takings claim.

10

**II. Plaza's Takings Claim is Not Ripe for Review**

Because all of Plaza's claims are subsumed within its takings claim, the Court must next address whether Plaza's takings claim is ripe for review. It is well settled that "if a State provides an adequate procedure for seeking just compensation, [a] property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Williamson Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 195 (1985). "Because the Fifth Amendment does not require compensation to be paid before a deprivation occurs, a 'taking' is not complete until the State fails to provide 'just compensation' for the property." *Bateman*, 89 F.3d at 708.  Thus, where a plaintiff has failed to first seek compensation pursuant to a state's inverse condemnation law, a federal takings claim is not ripe for review.  *See id.*

Under New Mexico law, when the state takes a person's property just compensation may be recovered by bringing an inverse condemnation action in state court.  *See* NMSA 1978, § 42A-1-29. An inverse condemnation proceeding "provides the exclusive remedy for the property owner if the condemnor takes or damages property without paying just compensation or without initiating proceedings to condemn" and "provides the means for the ascertainment and payment" of the damages caused by the taking. *North v. Public Service Co. of New Mexico*, 101 N.M. 222, 680 P.2d 603 (Ct. App. 1983).

Neither party appears to dispute that Plaza can bring an inverse condemnation claim in state court for the allegedly wrongful taking of Plaza's property.  Moreover, it appears that Plaza has not initiated an inverse condemnation proceeding in state court.  Rather, Plaza contends that is takings claim is ripe because  the purpose of the ripeness doctrine, as expressed by the Tenth Circuit in *Bateman*, is to ensure that there has been a final decision regarding the application of

regulations to the property at issue.  Response at 6.  Plaza notes that in *Bateman* the Tenth Circuit concluded that the plaintiff's claim was not ripe because he had not applied for a variance from the contested zoning ordinance and, consequently, there was "not a final reviewable decision."  *See Bateman*, 89 F.3d at 708.  Plaza contends that here there is a final reviewable decision because "there was no permit or variance [Plaza] could have applied for that would have cured the problem or provide just compensation."  Response at 6.

Contrary to Plaza's argument, however, finality was not the sole basis for the Tenth Circuit's conclusion that the plaintiff's claims were not ripe in *Bateman*.  In fact, the Tenth Circuit noted that even if there were a final decision, the plaintiff's "takings claim would still not be ripe for review because [the plaintiff] has not sought compensation from the [defendant] pursuant to [the state's] inverse condemnation law."  Thus, a takings claim is unripe either if there is no final reviewable decision *or* if there is a final reviewable decision but a plaintiff has failed to avail itself of a state's inverse condemnation proceedings.  Because Plaza has failed to pursue an inverse condemnation proceeding in state court, the Court concludes that Plaza's claims are unripe, that the City's Motion to Dismiss should be granted, and that this case should be dismissed.

IT IS ORDERED THAT Defendant City of Albuquerque's Motion to Dismiss Complaint for Declaratory and Injunctive Relief (Doc. No. 7) and Defendant Downtown Action Team, Inc.'s Motion to Dismiss Complaint For Declaratory and Injunctive Relief (Doc. No. 16)  are GRANTED and that Albuquerque Plaza Office Investment, LLC's Complaint for Declaratory and Injunctive Relief (Doc. No. 1) will be dismissed without prejudice.

_____
SENIOR UNITED STATES DISTRICT JUDGE